United States District Court
Southern District of Texas
**ENTERED**
May 09, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LANDSTAR RANGER, INC. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-120 |
| | § | |
| URBAN ROADS, INC. | § | |

# ORDER

Before the Court is Plaintiff Landstar Ranger, Inc.'s motion for default judgment against Defendant Urban Roads, Inc. (Dkt. No. 18). Plaintiff filed the motion after obtaining the Clerk's entry of default against Defendant (Dkt. Nos. 16, 17), which has not answered or otherwise responded to the suit. For the reasons below, Plaintiff's motion for default judgment (Dkt. No. 18) is **GRANTED**. The Court will enter final judgment separately, pursuant to Federal Rule of Civil Procedure 58.

## I.   BACKGROUND

On November 2, 2023, Plaintiff filed an original complaint, claiming Defendant breached over three hundred transportation contracts between the parties by not paying for Plaintiff's shipment services (Dkt. No. 1 at 2).[1] Plaintiff alleged Defendant accepted an invoice and underlying paperwork for each shipment without protest (*id*. at 3). Yet Defendant failed to pay Plaintiff, despite Plaintiff's demand for payment (*id*.). Plaintiff presented claims for (1) breach of contract; (2) quantum meruit; and (3) promissory estoppel (*id*. at 2–4). Plaintiff also sought attorneys' fees (*id*. at 4).

---

[1] Plaintiff made a typographical error in the number of contracts it initially alleged Defendant had breached (*see* Dkt. No. 1 at 2) (alleging breach of 312 transportation contracts). Plaintiff clarified in an advisory to the Court that the correct number of underlying contracts is 302 (Dkt. No. 20).

Plaintiff served Defendant with summons on November 13, 2023 (Dkt. No. 4). Therefore, Defendant's answer was due by December 4, 2023. *See* J. Garcia Marmolejo Civ. R. 6(A)(4) ("Responses by the nonmovant must be filed within 21 calendar days of [an opposed] motion."). However, Defendant did not file a timely answer or otherwise appear in the case, and still has not done so as of the date of this order. On January 25, 2024, Plaintiff filed an amended complaint, seeking damages of $295,075.44 against Defendant, in addition to attorneys' fees (Dkt. No. 9 at 3–4).

On March 1, 2023, after Defendant failed to respond to the amended complaint, United States Magistrate Judge Christopher dos Santos ordered Plaintiff to advise the Court regarding how it intended to proceed with the lawsuit (Dkt. No. 14). On March 4, 2024, Plaintiff filed a request for entry of default against Defendant, which the Clerk of Court entered on March 8, 2024 (Dkt. Nos. 16, 17). On March 12, 2024, Plaintiff filed the pending motion for default judgment (Dkt. No. 18).

In the default judgment motion, Plaintiff seeks damages of $295,075.44 in compensation for Plaintiff's performance on the underlying transportation contracts (Dkt. No. 18 at 6). Plaintiff seeks attorneys' fees of $3,034.80, out-of-pocket costs of $628, all costs of Court, and postjudgment interest (*id.*). Plaintiff submitted an exhibit compiling all the shipment invoices (Dkt. No. 18-5). The invoices' total is $295,075.44, consistent with Plaintiff's allegations (*see* Dkt. No. 9-1 at 26). Plaintiff also submitted an affidavit about its request for attorneys' fees and costs (Dkt. No. 18-3). A certificate of service indicates Plaintiff served the motion on Defendant and its registered agent on March 12, 2023 (Dkt. No. 18 at 7). Defendant has not responded to the motion.

## II.     JURISDICTION

*A. Subject-Matter Jurisdiction*

A federal court is "duty-bound to examine its subject-matter jurisdiction sua sponte." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017) (citations omitted). Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and the parties are, as relevant here, citizens of different states. *See I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 408 (5th Cir. 2023).

Plaintiff alleged that it is a Delaware corporation with a principal place of business in Florida, and that Defendant is a California corporation with a principal place of business in California (Dkt. No. 9 at 1). Corporations are deemed citizens of every state and foreign state in which they are incorporated, and the state or foreign state in which they have their principal place of business. *See* 28 U.S.C. § 1332(c)(1). Accordingly, Plaintiff is deemed a citizen of Delaware and Florida, and Defendant is deemed a California citizen. This fulfills the diverse citizenship requirement. *See* 28 U.S.C. § 1332(a). Further, the amount-in-controversy requirement is met because Plaintiff seeks $295,075.44 in damages. *See id.* (amount in controversy must exceed $75,000). So, the Court can exercise subject-matter jurisdiction over the parties here.

*B. Personal Jurisdiction*

Because Defendant is a California citizen, a brief discussion is warranted as to whether the Court has personal jurisdiction over it. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG*

*v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A) (service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.")). Specific personal jurisdiction over a defendant exists where the defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This requirement is satisfied if the defendant entered into a contractual relationship centered in the forum state and the plaintiff's claims arise out of that contact with the forum. *See id.* at 359 (citations omitted).

Here, Defendant entered into transportation contracts with Plaintiff which involved shipments to Laredo, Texas, and this dispute arises out of that contact with Texas. Thus, the Court has personal jurisdiction over Defendant.

### III.   LEGAL STANDARDS

Obtaining default judgment is a three-step process: (1) a properly-served defendant defaults—that is, "fail[s] to plead or otherwise respond to the complaint within the time required by the Federal Rules"; (2) the plaintiff procures the Clerk's entry of default; and (3) the plaintiff moves for a default judgment against the defendant. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed R. Civ. P. 55(a)–(b); *see also Champion v. Phaselink Util. Sols., LLC*, No. SA-22-CV-00145-JKP, 2022 WL 3693461, at *2 (W.D. Tex. Aug. 24, 2022).

Even if the plaintiff meets these requirements, the decision to grant a default

judgment is in the district judge's discretion. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (citation omitted). Because a default judgment is a "drastic remedy, not favored by the Federal Rules," it will be granted "only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

When determining whether to grant default judgment, the Court must (1) decide whether default judgment is procedurally warranted; and (2) assess the substantive merits of plaintiff's claims. *See Champion*, 2022 WL 3693461, at *2–3 (citations omitted). "Relevant factors [for finding default judgment is procedurally warranted] include [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

## IV. DISCUSSION

*A. Default Judgment*

Based on the *Lindsey* factors, default judgment is procedurally warranted.

(1) <u>Whether material issues of fact are at issue</u>: Defendant has not answered or otherwise appeared in the case, and thus has not contested any of Plaintiff's allegations of fact. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of

5

fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citation omitted).

(2) <u>Whether there has been substantial prejudice</u>: "Defendant's failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893; *Sun Bank of Ocala*, 874 F.2d at 276).

(3) <u>Whether the grounds for default are clearly established</u>: The grounds for default are clearly established by the procedural history of this case and the Clerk's entry of default, which noted that Defendant "has failed to answer or otherwise appear within the time period provided in the Summons and by law" (Dkt. No. 17). *See Innovative Sports Mgmt., Inc. v. Paisa's Truck LLC*, No. 4:22-CV-04105, 2024 WL 625316, at *3 (S.D. Tex. Feb. 14, 2024) (grounds for default clearly established by record and Clerk's Entry of Default).

(4) <u>Whether the default was caused by a good faith mistake or excusable neglect</u>: There is no evidence in the record that Defendant's failure to respond is the result of a good faith mistake or excusable neglect. *See United States v. One Smith & Wesson SDV9VE Pistol, 9 MM; SN FEC0557*, No. 5:23-CV-49, 2024 WL 913697, at *2 (S.D. Tex. Mar. 4, 2024) (Garcia Marmolejo, J.) (granting default judgment where record contained no evidence of good faith mistake or excusable neglect causing default of potential claimants) (citation omitted).

(5) <u>The harshness of a default judgment</u>: Plaintiff seeks only the relief to which it

6

is entitled under law, mitigating the harshness of default judgment. *See Hancock Whitney Bank v. ECS Exec. Corp Servs.*, No. 4:21-CV-00932, 2022 WL 1211375, at *3 (S.D. Tex. Apr. 25, 2022) (citation omitted).

(6) <u>Whether the court would think itself obliged to set aside the default on the defendant's motion</u>: There is no evidence indicating the Court would feel obliged to set aside the default if challenged by Defendant. *See Joosten v. Williams*, No. 4:22-CV-02427, 2023 WL 9231487, at *2 (S.D. Tex. Dec. 27, 2023), *report and recommendation adopted*, No. 4:22CV02427, 2024 WL 150764 (S.D. Tex. Jan. 12, 2024) (citation omitted).

Therefore, all of the *Lindsey* factors point towards default judgment being procedurally warranted here. Plaintiff also personally served Defendant with the lawsuit and served the instant motion on Defendant by certified mail, with return receipt requested (Dkt. Nos. 4, 18 at 7). *See* L.R. 5.5 ("Motions for default judgment must be served on the defendant-respondent by certified mail (return receipt requested)."). In addition, Defendant is a corporation and is thus not a minor, incompetent person, or a military servicemember, persons for whom certain limitations on entering default judgment apply (*see* Dkt. No. 18 at 5). *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931(b)(1); *Rodriguez v. Machinestation Int'l*, No. CV H-23-112, 2023 WL 8602792, at *2 (S.D. Tex. Nov. 3, 2023), *report and recommendation adopted*, No. 4:23-CV-00112, 2023 WL 8602788 (S.D. Tex. Dec. 12, 2023).

Further, Plaintiff's claims have substantive merit, as Plaintiff has pleaded sufficient facts to satisfy the elements of its breach of contract claim against

7

Defendant. In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l v. Egle Grp.*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (citation omitted).

Plaintiff alleges the parties entered into 302 transportation contracts from July 2022 through December 2023 (Dkt. Nos. 18 at 4; 20). Plaintiff claims that Defendant received the economic benefit of Plaintiff's transportation services and is thus liable for its freight charges (Dkt. No. 18 at 4). Plaintiff invoiced Defendant for each shipment, totaling $295,075.44 (*id.*). Plaintiff alleges that "[d]espite accepting each invoice and underlying paperwork without objection or protest, and despite due demand, Defendant has not made any payments to Plaintiff. Therefore, Defendant breached its obligations under each transportation contract by failing to pay Plaintiff's invoices within a reasonable period" (*id.*).

In summary, Plaintiff has alleged the parties entered into 302 contracts, which Plaintiff tendered performance under, and which Defendant breached by failing to pay Plaintiff for its freight charges, causing Plaintiff damages of $295,075.44. That sufficiently makes out Plaintiff's breach of contract claim against Defendant. *See Landstar Ranger, Inc. v. MDZ Logistics*, LLC, No. CV M-23-228, 2023 WL 7559144, at *2 (S.D. Tex. Oct. 27, 2023) (Plaintiff presented colorable breach of contract claim where it "stat[ed] that it provided transportation services pursuant to transportation

8

contracts and that Defendant failed to pay the amount owed."), *report and recommendation adopted*, No. 7:23-CV-00228, 2023 WL 7649359 (S.D. Tex. Nov. 14, 2023). Entering default judgment against Defendant for the undisputed sum of $295,075.44 is therefore appropriate based on the pleadings and supporting documentation Plaintiff provided. *See James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (evidentiary hearing on damages unnecessary where damages could be "computed with certainty by reference to the pleadings and supporting documents alone.") (citation omitted).

Plaintiff also brought claims of quantum meruit and promissory estoppel against Defendant (Dkt. No. 9 at 3–4). Though these claims were not pleaded in the alternative, they are based upon Defendant's same underlying failure to pay Plaintiff $295,075.44 for the transportation of Defendant's property (*see id.*). Plaintiff did not raise these claims in its motion for default judgment, instead requesting default judgment only for Defendant's breach of contract (*see* Dkt. No. 18). Therefore, the Court will not analyze these claims.

### B. Damages

#### 1. Breach of Contract

"A default judgment establishes the defendant's liability but not the quantity of damages." *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019), *as revised* (June 6, 2019) (citation omitted). "[W]here a plaintiff submits an affidavit and supporting documents demonstrating that the damages are in an amount certain, the entry of a default judgment in that amount without the need for an evidentiary

9

hearing is permissible." *Champion*, 2022 WL 3693461, at *3 (citing *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998)).

Here, Plaintiff submitted an invoice exhibit compiling amounts owed for every shipment, and a detailed affidavit regarding attorneys' fees and Plaintiff's out-of-pocket expenses (Dkt. Nos. 18-3, 18-5). The invoice exhibit compiles 302 separate shipment invoices, which total $295,075.44 (Dkt. No. 18-5). Plaintiff alleges that Defendant failed to pay Plaintiff for any of these shipments, causing damages to Plaintiff to the tune of $295,075.44 (Dkt. No. 18 at 4). This figure is an amount certain, and thus damages are "capable of mathematical calculation." *See Hancock Whitney Bank*, 2022 WL 1211375, at *4 (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Therefore, a hearing is unnecessary as to these damages. Having sufficiently established breach of the transportation contracts and the amount of damages that flowed from the breach, Plaintiff is entitled to recover $295,075.44 from Defendant.

### 2. Attorneys' Fees

In determining the award and reasonableness of attorneys' fees, state law controls where state law supplies the rule of decision, as here. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "Under Texas law, when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) (citations omitted).

"Federal courts sitting in diversity typically apply the two-step lodestar

method in calculating reasonable attorneys' fees under Texas law." *Winston v. State Farm Lloyds*, No. SA-20-CV-00515-JKP, 2022 WL 3327770, at *4 (W.D. Tex. Aug. 11, 2022) (citing *Rappaport v. State Farm Lloyds*, No. 00–10745, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam)).[2] "Using this approach, the Court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate." *Id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). "Once the lodestar figure is initially determined, the Court may adjust the figure upward or downward as necessary in light of enunciated factors." *Id.* (citing *La. Power*, 50 F.3d at 324.) The factors Texas courts use to assess the reasonableness of attorneys' fees are as follows:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers

---

[2] For some time, the caselaw was unclear regarding whether the lodestar method applied to breach of contract claims. The Texas Court of Appeals in San Antonio held in an unpublished opinion that the lodestar method does not apply in a "garden-variety breach of contract claim." *See Paez v. Trent Smith Custom Homes, LLC*, No. 04-13-00394-CV, 2014 WL 1089751, at *4 (Tex. App.—San Antonio Mar. 19, 2014); *see also Concert Health Plan v. Hous. Nw. Ptrs., Ltd.*, No. 14–12–00457–CV, 2013 WL 2382960, at *9 n.17 (Tex. App.—Houston [14th Dist.] May 30, 2013, no pet.) ("[T]he lodestar method is not the method used for calculating the appropriate attorney's fees in a breach-of-contract case. . ."); *see also Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 308 (5th Cir. 2014) ("It is unclear whether the lodestar method is the correct method for calculating attorney's fees under [Texas Civil Practice & Remedies Code] section 38.001."). But the Texas Supreme Court has since clarified that, "[i]t should have been clear from our opinions . . . that we intended the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497–98 (Tex. 2019). Accordingly, the Court employs the lodestar method here.

11

          performing the services; and
(8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *but see Rohrmoos Venture*, 578 S.W.3d at 501 ("[*Arthur Andersen*] considerations . . . may not be used to enhance or reduce the [lodestar] calculation to the extent that they are already reflected in the reasonable hours worked and reasonable hourly rate.").

    When determining whether to award attorneys' fees, and in what amount, "[t]he court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Hancock Whitney Bank*, 2022 WL 1211375, at *5 (quoting *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied)). Attorneys' fees have historically included fees for paralegal services. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008).

    Plaintiff supplied an affidavit explaining the basis for its $3,034.80 attorneys' fees figure and addressing the reasonableness of the fees (Dkt. No. 18-3). Plaintiff's attorney, Vic Houston Henry, who filed the affidavit, cited hourly rates of $250 for shareholder attorneys from the Dallas firm involved in this case, $200 for associate attorneys, and $140 for paralegals (Dkt. No. 18-3 at 2). The attorneys who provided legal services on this matter included Mr. Henry (shareholder), who has been an attorney since 1984, Emileigh S. Hubbard (shareholder), who has been an attorney since 2011, and Davinder Jassal (associate), who has been licensed as a Texas

12

attorney since 2018 (*id.*).³ The paralegals who provided services on this case are Lisa Meredith, who has 16–17 years' experience,⁴ and Sabrina Moreno, who has over two years' experience (*id.*).

These hourly attorneys' fees are reasonable and customary for a Dallas firm such as the one representing Plaintiff in this case. If anything, they are somewhat low for the Dallas-Fort Worth-Arlington Metropolitan Area. *See* STATE BAR OF TEXAS DEP'T OF RSCH. AND ANALYSIS, 2019 Hourly Fact Sheet,⁵ at 10 (median hourly rate of $308 for attorneys in Dallas-Fort Worth-Arlington Metropolitan Statistical Area).

As for the paralegals, Mr. Henry's affidavit does not clarify whether their work was clerical or legal in nature (*see* Dkt. No. 18-3 at 2–3). This is problematic, because "[p]aralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). In addition, the cited paralegal billing rate of $140 per hour is higher than average. The 2019 median hourly rate for paralegals in Texas was $123. *See* STATE BAR OF TEXAS DEP'T OF RSCH. AND ANALYSIS, 2020 Paralegal Compensation Survey,⁶ at 7. Although Lisa Meredith has 16–17 years' experience, Sabrina Moreno has just "over 2 years of experience"—yet Plaintiff argues a $140 hourly rate is reasonable for both of them.

---

³ The affidavit erroneously states Mr. Jassal has "over two (5) years of experience practicing law. . ." The State Bar of Texas website clarifies that Mr. Jassal has been licensed since November 2, 2018. STATE BAR OF TEXAS, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=355755 (last visited May 9, 2024).
⁴ The affidavit again erroneously states that Lisa Meredith "is a paralegal with over sixteen (17) years of experience. . ." (Dkt. No. 18-3).
⁵ Available at https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54237 (last visited May 9, 2024).
⁶ Available at https://www.texasbar.com/AM/Template.cfm?Section=Home&Template=/CM/ContentDisplay.cfm&ContentID=52102 (last visited May 9, 2024).

13

That is unlikely. *See City of San Antonio, Texas v. Hotels.com*, No. 5-06-cv-381-OLG, 2017 WL 1382553, at *12 (W.D. Tex. Apr. 17, 2017) (citing then-prevailing hourly market rate for paralegals with 10-20 years of experience as $115.00 versus $65.00 for paralegals with 0-4 years of experience). It is Plaintiff's burden to show that the requested attorneys' fees are reasonable. *Michels Corp. v. EMS USA, Inc.*, No. CV H-16-2370, 2018 WL 2995637, at *1 (S.D. Tex. Feb. 5, 2018). Plaintiff has not presented adequate support for the award of paralegal fees here. *See id.* (denying paralegal fees where plaintiff's evidence did not demonstrate whether the paralegals' work was more clerical or legal in nature, and the asserted hourly rate "appear[ed] high").

Thus, the adjusted breakdown of reasonable attorneys' fees is as follows:

- Vic Henry: 9.9 hours[7] at $250.00 per hour = $2,475.00
- Emileigh Hubbard: 0.3 hours at $250.00 per hour = $75.00
- Davinder Jassal: 0.6 hours at $200.00 per hour = $120.00
- **<u>Total reasonable fees = $2,670.00</u>**

Having determined that $2,670.00 is an appropriate lodestar figure, the Court turns to whether exceptional circumstances exist warranting an adjustment of the lodestar under the *Arthur Andersen & Co.* factors. *See* 945 S.W.2d at 818; *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012) ("We accordingly accept the premise that lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar.").

In his affidavit, Mr. Henry stated that:

- The time and labor required, and the novelty and difficulty of the questions

---

[7] At the time of filing the affidavit, Mr. Henry had worked 8.9 hours on the case, but anticipated attorneys "working an additional $250 for services concerning revising and filing the Motion for Default Judgment" (Dkt. No. 18-3 at 3). That is equivalent to one shareholder attorney billing hour, which the Court finds reasonable and credits here to Mr. Henry, resulting in a total of 9.9 hours.

14

- involved in this matter were of average amounts and difficulty;
- The skill required to perform the legal services in this matter properly required average competency;
- Taking on this representation did not cause the firm to turn down any other employment;
- The attorneys' fees here represent usual and customary charges for legal services in lawsuits like this one;
- There were no time limitations imposed by the representation, and the firm has had a relationship with this client for over 22 years;
- The experience, reputation, and ability of the lawyers and paralegals involved was more than sufficient to handle this case; and
- The fees in this case were hourly and not contingent.

(Dkt. No. 18-3 at 3).

To the extent these considerations are already reflected in the lodestar figure, which many of them are, they cannot be used to enhance or reduce the lodestar calculation. *See Rohrmoos Venture*, 578 S.W.3d at 500–01. Nor does Plaintiff seek to enhance the lodestar. Because there is a "'strong presumption' that the lodestar figure is reasonable," the Court declines to disturb it. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (noting that "[the] presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."). Therefore, Plaintiff is entitled to attorneys' fees of $2,670.00.

3. <u>Out-of-Pocket Expenses</u>

Plaintiff also seeks to recover "out of pocket costs of $628" (Dkt. No. 18 at 6). This sum accounts for the $402 fee to file this case, and a $226 fee for service on Defendant in California (Dkt. No. 18-3 at 3).

Federal Rule of Civil Procedure 54(d) provides that costs should be awarded to the prevailing party. And 28 U.S.C. § 1920 permits recovery of court fees as a court

cost. *See Jensen v. Lawler*, 338 F. Supp. 2d 739, 745 (S.D. Tex. 2004). Therefore, Plaintiff is entitled to recover the $402 filing fee from Defendant.

However, private process server fees are not recoverable costs unless exceptional circumstances exist. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (citing *Cypress–Fairbanks Indep. Sch. Dist. v. Michael*, 118 F.3d 245, 257 (5th Cir. 1997)). Plaintiff has not alleged any exceptional circumstances surrounding service that warrant the award of service costs here. Therefore, Plaintiff's request for recovery of service costs will be denied.

### 4. Postjudgment Interest

District courts have no discretion to deny postjudgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). Accordingly, Plaintiff is entitled to recover postjudgment interest at the prevailing rate of 5.19% *per annum*. *See* 28 U.S.C. § 1961; UNITED STATES DISTRICT & BANKRUPTCY COURT SOUTHERN DISTRICT OF TEXAS: POST-JUDGMENT INTEREST RATES (rate effective May 6, 2024, through May 12, 2024).[8]

## V. CONCLUSION

Plaintiff Landstar Ranger, Inc.'s motion for default judgment against Defendant Urban Roads, Inc. (Dkt. No. 18) is hereby **GRANTED**.

**IT IS HEREBY ORDERED** that Plaintiff Landstar Ranger, Inc. is awarded breach of contract damages in the amount of $295,075.44.

---

[8] Rate available at https://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited May 9, 2024).

**IT IS FURTHER ORDERED** that Plaintiff Landstar Ranger, Inc. is awarded attorneys' fees in the amount of $2,670.00.

**IT IS FURTHER ORDERED** that Plaintiff Landstar Ranger, Inc. is awarded costs of $402.00.

**IT IS FURTHER ORDERED** that Plaintiff Landstar Ranger, Inc. is awarded postjudgment interest on the above at a rate of 5.19% *per annum*.

Pursuant to Federal Rule of Civil Procedure 58(a), and for the reasons set forth above, final judgment is hereby **ENTERED** for Plaintiff Landstar Ranger, Inc.

It is so **ORDERED**.

**SIGNED** May 9, 2024.

_____
Marina Garcia Marmolejo
United States District Judge